UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


B.A. Individually, and as
Parent and Next Friend of
Minor Child, J.F.

   v.                                      Civil No. 15-cv-433-JD
                                           Opinion No. 2017 DNH 120

Manchester School District
SAU 37 and Donna M. Varney


O R D E R


    B.A. brought suit in state court on her own behalf and on behalf of her minor and disabled son, J.F., alleging federal and state claims against the Manchester School District and a former teacher in the school district, Donna M. Varney. The defendants removed the case to this court. Varney moves for summary judgment on Counts I and X. B.A. objects to summary judgment on Count I, with clarification of her claim, but does not object to summary judgment on Count X.

    Varney requested oral argument on her motion for summary judgment. In support, Varney states only that "[o]ral argument will assist the Court in analyzing the parties' arguments and in applying the evidence obtained in discovery to those arguments." Varney's general statement does not explain specifically what assistance oral argument would provide in this case to take it outside the general rule that motions will be decided without

oral argument.  LR 7.1(d).  Therefore, the motion was decided without oral argument.

## Standard of Review

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A genuine dispute is one that a reasonable fact-finder could resolve in favor of either party and a material fact is one that could affect the outcome of the case." Flood v. Bank of Am. Corp., 780 F.3d 1, 7 (1st Cir. 2015).  The facts and reasonable inferences are taken in the light most favorable to the nonmoving party. McGunigle v. City of Quincy, 835 F.3d 192, 202 (1st Cir. 2016).  "On issues where the movant does not have the burden of proof at trial, the movant can succeed on summary judgment by showing 'that there is an absence of evidence to support the nonmoving party's case.'" OneBeacon Am. Ins. Co. v. Commercial Union Assurance Co. of Canada, 684 F.3d 237, 241 (1st Cir. 2012) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)).

## Background

J.F. was eight years old when he was assigned to Donna Varney's special education classroom for the 2012-2013 school year at Jewett Street School in Manchester.  The students in the

classroom had various disabilities that precluded them from being integrated into the school's general population.[1]  The classroom also had two teaching assistants, Alicia Otis and Brianne Corey.

Varney was a full-time special education teacher at the Jewett Street School.  She was certified in special education and early childhood education.

Because of intrauterine exposure to a virus, J.F. was born with weakness on the entire right side of his body, difficulty with swallowing, and cerebral palsy.  He also developed a seizure disorder.  When he was five years old, he was diagnosed with a significant Pervasive Developmental Delay and was identified as being on the autism spectrum.  He has a limited ability to express himself through language.

J.F.'s impairment in the ability to chew and swallow causes him to be at risk of choking and aspiration.  J.F. also has muscle issues that make it difficult for him to walk and to coordinate other functions such as eating.  His difficulties with eating make him a slow and picky eater, and he has cycles of better and poorer eating habits.

Since J.F. began to attend school in Manchester in 2007, his Individualized Educational Plans ("IEPs") have provided that

---

[1] B.A. states that there were seven children in the classroom, while Varney states that there were eight.

he needed to be watched during eating because he could choke or gag on food. Varney received all of J.F.'s school records before the first day of school in August of 2012 and read the records, including records that explained that J.F. was medically fragile and had eating problems. From that information, Varney knew that J.F. was at risk for choking and gagging and that he was weak and unsteady on his feet.

J.F. had a seizure on the first day of school, and his mother came to get him. He was absent for a week after that incident. Early in September, Varney saw J.F. choke on a cracker and realized that he needed more time to eat because of the risk of choking. J.F. was absent again later in September because he had stopped eating and drinking.

During a meeting in September with J.F.'s mother and pediatrician, Varney heard that J.F. could choke or over stuff his mouth while eating. There was no discussion of techniques for getting J.F. to eat more. Varney knew that J.F. could feed himself and could clean up after eating. She also knew that she was not responsible for getting J.F. to eat more or to keep food in his mouth. She knew that there was nothing in J.F.'s IEP that required use of feeding techniques.

J.F. and other students in the class ate a snack at 10:00 a.m. and ate again at noon. Alicia Otis, one of the assistant teachers in the classroom, saw Varney force feed J.F. five or

more times between September of 2012 and January of 2013. Brianne Corey, the other assistant teacher, also saw Varney force feed J.F. Varney would force J.F.'s mouth open with her hands and force food into J.F.'s mouth. J.F. would be crying and screaming during this procedure. When J.F. tried to spit out the food, Varney covered his mouth with her hand until he swallowed. Varney later admitted to the Manchester police that her force feeding of J.F. was inappropriate.

Otis was concerned that Varney's roughness would cause J.F. to have a seizure. J.F. would try to rock himself to sleep to avoid the abuse. The force feeding incidents so exhausted J.F. that he would put his head on the desk afterwards and sleep.

In addition to the force feeding, Varney forced J.F. to stand up during lunch if he refused to eat. These incidents occurred more frequently than the force feeding, approximately three or four days of each school week. Varney would push on J.F.'s back to get him to stand and would then take his chair away. J.F. reacted with rocking or falling asleep or falling on the floor and screaming and crying.

Varney also frequently yelled at J.F. to get him to eat. Otis believed Varney yelled at J.F. to scare him into eating and to show him that she was in charge. Other staff members at the Jewett Street School heard Varney yelling and asked Otis about

it.  During the fall, Otis and Corey discussed their disagreement with Varney's tactics and what to do about it.

Another teacher complained to the principal that Varney was overwhelmed and did not have control of her classroom.  The school nurse had heard Varney yell at her students the year before and complained to the principal about Varney's behavior.  The school nurse continued to notice Varney's unkind behavior with her students during the 2012 to 2013 school year and complained to the principal that Varney was yelling at J.F. to get him to eat.  Corey noted that Varney's yelling was so loud it could be heard through the walls.

J.F. became withdrawn during the 2012-2013 school year and did not act like himself.  He resisted going to school.  He also developed an aversion to food and would scream and turn away when his mother approached with food.  He was hospitalized in September of 2012 because of a lack of food.

J.F. was treated by physicians and behavioral specialists to determine why his behavior had changed and why he would not eat or drink.  Neither J.F.'s mother nor any of his health providers knew about Varney's force feeding and other conduct.  Because of the eating problems, J.F. had a feeding tube surgically inserted at the end of January of 2013.  Varney continued to attempt to force feed J.F. even after the feeding tube was inserted.

In April of 2013, Varney was suspended pending an investigation of her conduct with another student in her classroom. The Manchester police were involved in the investigation, and Varney was eventually charged with simple assault based on her conduct with the other student. The Manchester police told J.F.'s mother about the force feeding incidents with J.F. During her deposition in this case, Varney invoked the protection of the Fifth Amendment when asked about her treatment of J.F.

J.F.'s doctor believes that the force feeding caused J.F.'s aversion to eating. Joseph Shrand, M.D., a board certified child and adolescent psychiatrist, has provided his opinion that J.F.'s change in eating patterns was the result of Varney's treatment of him. Dr. Shrand also concludes that Varney's treatment caused J.F. to have post-traumatic stress disorder. Dennis C. Tanner, Ph.D., an expert in speech and swallowing, concluded that Varney's treatment of J.F. caused the increase in severity of J.F.'s eating and swallowing problems. J.F. is expected to require the feeding tube for the rest of his life.

## Discussion

Because B.A. does not object to summary judgment on her claim in Count X, that claim is dismissed. Varney also moves for summary judgment on B.A.'s civil rights claims in Count I.

7

In support, Varney contends that B.A. cannot prove a violation of either substantive or procedural due process and cannot base claims brought pursuant to 42 U.S.C. § 1983 on the Individuals with Disabilities Education Act ("IDEA"), the Rehabilitation Act, or the Americans with Disabilities Act ("ADA").

In response, B.A. explains that she did not bring claims in Count I arising from the IDEA, the Rehabilitation Act, or the ADA. Those claims are brought in other counts against the school district. B.A. does object to summary judgment on her claims in Count I that Varney violated J.F.'s substantive and procedural due process rights in the actions she took to force J.F. to eat.

A. Substantive Due Process

To prove a substantive due process claim, a plaintiff must show that he "suffered the deprivation of an established life, liberty, or property interest, and that such deprivation occurred through governmental action that shocks the conscience." Najas Realty, LLC v. Seekonk Water Dist., 821 F.3d 134, 145 (1st Cir. 2016) (internal quotation marks omitted). The defendant's actions "must be 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" Irish v. Maine, 849 F.3d 521, 526 (1st Cir. 2017) (quoting City of Sacramento v. Lewis, 523 U.S. 833, 847 n.8

8

(1998)). In circumstances where the defendant had "an opportunity to reflect and make reasoned and rational decisions, deliberately indifferent behavior may suffice" to meet the standard for a substantive due process violation. Id. (internal quotation marks omitted).

Varney contends that her conduct, as a matter of law, does not meet the standard required for a substantive due process violation. In support, she cites cases in which teachers mistreated students in a variety of ways, and courts found no substantive due process violation. Those cases also found that the plaintiff did not suffer sufficient harm to support a substantive due process claim.

In this case, however, B.A. has provided expert opinions to support the level of harm she asserts J.F. has suffered as a result of Varney's force feeding and other actions related to eating. Based on that evidence, which is not contradicted by Varney, B.A. raises a factual issue as to whether Varney caused J.F.'s eating aversion, which required insertion of a feeding tube. He will need the feeding tube for the rest of his life. In addition, the expert's opinions are that Varney's actions caused J.F. to have serious psychological injury, including post-traumatic stress disorder. Therefore, the record in this case supports a level of injury sufficient to support the substantive due process claim.

Varney also contends that her actions were not the brutal and inhumane conduct that would shock the conscience. The court disagrees.

Varney force fed a disabled child who was at risk of choking, gagging, and seizures; forced him to stand to eat when his physical disabilities made that difficult; and yelled at him to force him to eat. Varney's actions caused J.F. to scream and cry and frightened him to the point that he would try to fall asleep to avoid her. According to the experts, Varney's actions caused serious and lasting physical and psychological harm. Those actions could be conscience shocking within the prohibition of the Fourteenth Amendment.

B.  <u>Procedural Due Process</u>

The Fourteenth Amendment protects against the deprivation of life, liberty, or property without the due process of law. U.S. Const. amend. XIV, § 1. To establish a procedural due process claim under § 1983, a plaintiff must prove that she "(1) had a property interest of constitutional magnitude and (2) was deprived of that property interest without due process of law." Miller v. Town of Wenham, 833 F.3d 46, 52 (1st Cir. 2016). The Due Process Clause requires "certain procedures, such as notice and a hearing, by which an individual can prove a substantive

entitlement to (or defend against a deprivation of) property."
Nelson v. Colorado, 137 S. Ct. 1249, 1265 (2017).

The parties agree that J.F. had a protected property interest in receiving a free and appropriate public education. Varney contends that B.A. cannot show that Varney deprived J.F. of the right to a free and appropriate public education without due process. In response, B.A. contends that Varney's conduct caused J.F. to miss school for treatment of the food aversion, which Varney caused, and to miss school for the surgical implant of the feeding tube. B.A. contends that Varney's conduct in causing those problems was arbitrary but does not explain what process was due before or after Varney acted as she did.

In other words, procedural due process claims address the means the defendant should have taken, but did not take, to protect the plaintiff's property interest either before deprivation or after deprivation. For example, a student is entitled to due process either before or after being suspended from school. Goss v. Lopez, 419 U.S. 565, 577 (1975). The process due depends on the extent of the student's educational deprivation, which for a ten-day suspension would be effective notice and an informal hearing. Id.

Here, however, assuming that Varney's conduct caused J.F. to miss school, she did not suspend J.F. or take any direct action to prevent him from attending school. As such, B.A. has

11

not shown that Varney took action that would trigger due process rights.  In other words, there was no opportunity for notice or a hearing, and those concepts are not relevant to the reasons J.F. missed school.  Therefore, B.A. has not articulated a cognizable procedural due process claim.

## Conclusion

For the foregoing reasons, the defendant's motion for summary judgment (document no. 19) is granted as to Count X and the procedural due process claim in Count I, but is denied as to the substantive due process claim in Count I.  As modified on summary judgment, Count I brings only a claim for violation of substantive due process.

SO ORDERED.

*[signature]*
Joseph DiClerico, Jr.
United States District Judge

June 14, 2017

cc:  Erin J. M. Alarcon, Esq.
     Mark S. Bodner, Esq.
     Keith F. Diaz, Esq.
     Robert J. Meagher, Esq.
     Michael B. O'Shaughnessy, Esq.
     James G. Walker, Esq.